UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD ALLEN REYNOLDS,

                    Plaintiff,

              v.

LEWIS COUNTY WASHINGTON, et al.,

                    Defendants.

CASE NO. C13-6062 BHS

ORDER DENYING
DEFENDANTS' MOTION TO
STRIKE, GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, AND
DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on the parties' cross-motions for summary

judgment (Dkts. 28, 43).  The Court has considered the pleadings filed in support of and

in opposition to the motions and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On December 6, 2013, Plaintiff Ronald Reynolds ("Reynolds") filed a 42 U.S.C.

§ 1983 suit against Defendants Lewis County, Lewis County Coroner, Warren McLeod,

and Jane Doe McLeod (collectively "Defendants") in Lewis County Superior Court.  Dkt.

1  2, Declaration of John Justice, Ex. 2 ("Comp.").  On December 13, 2013, Defendants

2  removed the case to this Court.  Dkt. 1.

3       On January 15, 2015, Defendants moved for summary judgment.  Dkt. 28.  On

4  February 13, 2015, Reynolds filed a cross-motion for summary judgment.  Dkt. 43.  On

5  March 9, 2015, Defendants responded to Reynolds's cross-motion and moved to strike

6  various exhibits.[1]  Dkt. 50.  On March 12, 2015, Reynolds replied.  Dkt. 51.

7  ## II. FACTUAL BACKGROUND

8       On December 16, 1998, Reynolds's wife, Ronda Reynolds, was found dead from a

9  single gunshot wound to the head in the family home.  Dkt. 50-1, Second Declaration of

10  John Justice ("Second Justice Dec."), Ex. 2 at 8.  Reynolds was home at the time.  Dkt.

11  29, Declaration of John Justice ("Justice Dec."), Ex. 1 ("Reynolds Dep.") 50:18–52:1.

12       On August 9, 1999, Lewis County Coroner, Terry Wilson ("Coroner Wilson"),

13  listed Ronda Reynolds's manner of death as suicide on her death certificate.  Second

14  Justice Dec., Ex. 2 at 8.  On May 30, 2002, a law enforcement investigation confirmed

15  that Ronda Reynolds died of a self-inflicted gunshot wound.  *Id.*

16       In 2006, Ronda Reynolds's mother petitioned for judicial review of Coroner

17  Wilson's determination.  *Id.*  In 2009, a jury found that Coroner Wilson inaccurately

18  determined that Ronda Reynolds's death was a suicide.  *Id.* at 8–9.  In 2010, the trial

19  court subsequently ordered that the manner of Ronda Reynolds's death be removed from

20

21      [1] In reaching its decision on the parties' summary judgment motions, the Court has not

22  relied on the evidence that Defendants seek to strike.  Accordingly, the Court denies Defendants' motion to strike (Dkt. 50).

1   her death certificate.  Dkt. 30, Declaration of Warren McLeod ("McLeod Dec.") ¶ 7.  The

2   trial court also ordered that her manner of death be redetermined.  *Id.*

3        Coroner Wilson appealed the verdict.  Second Justice Dec., Ex. 2 at 9.  While the

4   appeal was pending, Lewis County voters elected a new coroner, Warren McLeod

5   ("Coroner McLeod").  Reynolds Dep. 82:12–20; McLeod Dec. ¶ 7.  Coroner McLeod

6   took office on January 1, 2011.  McLeod Dec. ¶ 7.

7        After taking office, Coroner McLeod was informed of the trial court's order

8   regarding Ronda Reynolds's manner of death.  *Id.*  On January 3, 2011, Coroner McLeod

9   issued an amended death certificate for Ronda Reynolds.  *Id.*  The amended certificate

10  changed her manner of death from suicide to undetermined.  *Id.*

11       Coroner McLeod decided to convene an inquest jury pursuant to RCW 36.24.020

12  to redetermine Ronda Reynolds's manner of death.  *Id.*  Coroner McLeod notified

13  Reynolds that an inquest would take place.  Reynolds Dep. 82:19–83:1.  The appellate

14  court subsequently dismissed the appeal as moot.  McLeod Dec. ¶ 9.

15       On October 10, 2011, Coroner McLeod began the inquest.  McLeod Dec. ¶ 10.

16  An inquest jury of five people, with two alternates, was selected.  *Id.*  Many of the jurors

17  were familiar with the case, and two had read a book about Ronda Reynolds's death.  *Id.*

18  All jurors swore under oath to be fair and impartial and to reach a verdict solely based on

19  evidence presented at the inquest.  *Id.*

20       During the inquest, the jury heard testimony from fact and expert witnesses.  *Id.*

21  ¶ 11.  The jury also received all photographs, reports, and other written evidence gathered

22  by law enforcement during its investigation.  *Id.*  Reynolds was subpoenaed to testify in

1   front of the inquest jury.  Reynolds Dep. 84:8–10, 84:22–24.  He moved to quash the

2   subpoena, which Coroner McLeod granted.  Reynolds Dep. 84:25–85:3, 86:24–87:5.

3   Reynolds did not testify in front of the inquest jury.  Reynolds Dep. 86:24–87:5.

4          At the end of the evidence presentation, Coroner McLeod instructed the jury on

5   the deliberation process.  McLeod Dec., Ex. 3 at 12–13.  Coroner McLeod told the jury

6   that they should apply a preponderance of the evidence standard.  *Id.* at 13.

7          The jury was asked to determine the manner of Ronda Reynolds's death.  McLeod

8   Dec., Ex. 4.  The inquest jury unanimously found that her manner of death was homicide.

9   *Id.* at 6.  The jury was then instructed to determine whether they could identify "the

10  person or persons responsible" for Ronda Reynolds's death.  McLeod Dec., Ex. 5.  The

11  jury unanimously identified Reynolds and his son, Jonathan Reynolds, as the persons

12  responsible for Ronda Reynolds's death.  *Id.* at 2.

13         On October 19, 2011, Coroner McLeod issued arrest warrants for Reynolds and

14  his son pursuant to RCW 36.24.100.  McLeod Dec. ¶ 14, Ex. 6.  RCW 36.24.100

15  provides: "If the [inquest] jury finds that the person was killed and the party committing

16  the homicide is ascertained by the inquisition, but is not in custody, the coroner shall

17  issue a warrant for the arrest of the person charged, returnable forthwith to the nearest

18  magistrate."

19         On October 20, 2011, the Lewis County Sheriff's Office notified Coroner McLeod

20  that someone had possibly seen an inquest juror in the courthouse with the book about

21  Ronda Reynolds's death.  McLeod Dec. ¶ 15.  Based on this information, Coroner

22  McLeod quashed Reynolds's arrest warrant until an investigation could be conducted.  *Id.*

1  The investigation revealed that the person with the book could not have been an inquest
2  juror. *Id.*

3       On October 25, 2011, Coroner McLeod reissued Reynolds's arrest warrant.
4  McLeod Dec., Ex. 7.  Two days later, Coroner McLeod learned that the Lewis County
5  Prosecutor would not file any criminal charges against Reynolds and his son.  McLeod
6  Dec. ¶ 16.  Coroner McLeod quashed Reynolds's arrest warrant again to consider
7  whether the warrants should be issued in light of the Lewis County Prosecutor's decision.
8  *Id.*

9       Coroner McLeod reviewed RCW 36.24.100 again and determined that its
10  language regarding the issuance of arrest warrants was mandatory.  *Id.* ¶ 17.  On October
11  28, 2011, Coroner McLeod reissued the final arrest warrants for Reynolds and his son.
12  McLeod Dec., Ex. 9.

13       The Lewis County Sheriff notified Reynolds of the arrest warrant and asked him
14  to voluntarily come to the Sheriff's Office.  Reynolds Dep. 97:18–98:9.  Reynolds met
15  with the Sheriff and was driven to the jail for booking.  Reynolds Dep. 101:6–102:8.
16  Reynolds appeared before a judge.  Reynolds Dep. 105:9–17.  The Lewis County
17  Prosecutor informed the judge that no charges would be filed.  Reynolds Dep. 105:18–21.
18  The judge subsequently told Reynolds that he was free to go.  Reynolds Dep. 107:1–6.

19       On August 15, 2012, Reynolds resigned from his job with the Toledo School
20  District.  Second Justice Dec., Ex. 3 at 21:21–22:24.

21
22

1

### III. DISCUSSION

2

**A.    Defendants' Motion for Summary Judgment**

3       Defendants move for summary judgment on several grounds.  First, Defendants

4    argue that Coroner McLeod is entitled to qualified immunity.  Dkt. 28 at 12.

5    Additionally, Defendants argue that Lewis County is not liable because no constitutional

6    violation occurred.  *Id.* at 6.  Finally, Defendants argue that Coroner McLeod is

7    statutorily immune from Reynolds's state law claims.  *Id.* at 15–17.

8       **1.    Summary Judgment Standard**

9       Summary judgment is proper only if the pleadings, the discovery and disclosure

10   materials on file, and any affidavits show that there is no genuine issue as to any material

11   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

12   The moving party is entitled to judgment as a matter of law when the nonmoving party

13   fails to make a sufficient showing on an essential element of a claim in the case on which

14   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

15   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

16   could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

17   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

18   present specific, significant probative evidence, not simply "some metaphysical doubt").

19   *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

20   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

21   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

22

1    U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

2    626, 630 (9th Cir. 1987).

3         The determination of the existence of a material fact is often a close question. The

4    Court must consider the substantive evidentiary burden that the nonmoving party must

5    meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

6    U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

7    issues of controversy in favor of the nonmoving party only when the facts specifically

8    attested by that party contradict facts specifically attested by the moving party.  The

9    nonmoving party may not merely state that it will discredit the moving party's evidence

10   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

11   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

12   nonspecific statements in affidavits are not sufficient, and missing facts will not be

13   presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

14        **2.     Section 1983 Claims**

15        Section 1983 is a procedural device for enforcing constitutional provisions and

16   federal statutes; the section does not create or afford substantive rights.  *Crumpton v.*

17   *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under section 1983,

18   a plaintiff must demonstrate that (l) the conduct complained of was committed by a

19   person acting under color of state law and that (2) the conduct deprived a person of a

20   right, privilege, or immunity secured by the Constitution or by the laws of the United

21   States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by*

22   *Daniels v. Williams*, 474 U.S. 327 (1986).

1    Here, Reynolds alleges that Coroner McLeod violated his Fourth and Fourteenth

2    Amendment rights.  Comp. ¶ 3.1; Dkt. 43-1 at 27.  Reynolds also contends that Lewis

3    County is liable for Coroner McLeod's unconstitutional actions.  Dkt. 43-1 at 28.

4                    **a.    Qualified Immunity**

5    Defendants argue that Coroner McLeod is entitled to qualified immunity because

6    Reynolds has not established that any constitutional violation occurred.  Dkt. 28 at 6.

7    Defendants also contend that Coroner McLeod did not violate clearly established law.  *Id.*

8    at 14.

9    Qualified immunity shields government officials from civil liability unless a

10   plaintiff demonstrates: "(1) that the official violated a statutory or constitutional right,

11   and (2) that the right was 'clearly established' at the time of the challenged conduct."

12   *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  The Court has discretion to decide

13   "which of the two prongs of the qualified immunity analysis should be addressed first in

14   light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S.

15   223, 236 (2009).

16                    **i.    Fourth Amendment**

17   Reynolds first alleges that Coroner McLeod violated his Fourth Amendment rights

18   by issuing the arrest warrant.  Comp. ¶ 3.1; Dkt. 43-1 at 27.  "An arrest without probable

19   cause violates the Fourth Amendment and gives rise to a claim for damages under

20   § 1983."  *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).  Probable cause

21   exists when the facts and circumstances would cause a prudent person to believe that the

22   individual charged with the crime committed it.  *Henry v. United States*, 361 U.S. 98, 102

1  (1959).  The plaintiff bears the burden of proving the absence of probable cause.  *Beck v.*

2  *City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008).

3        In Washington, an inquest proceeding is one of four "established, recognized and

4  legally permissible methods for determining the existence of probable cause."  *State v.*

5  *Jefferson*, 79 Wn.2d 345, 347 (1971) (en banc).  Under RCW 36.24.020, a coroner has

6  discretion to hold an inquest proceeding:

7            Any coroner, in his or her discretion, may hold an inquest if the
             coroner suspects that the death of a person was unnatural, or violent, or
8            resulted from unlawful means, or from suspicious circumstances, or was of
             such a nature as to indicate the possibility of death by the hand of the
9            deceased or through the instrumentality of some other person . . . .

10  RCW 36.24.020.

11        Viewed in the light most favorable to Reynolds, the evidence in the record

12  establishes that Reynolds's arrest was based on probable cause.  Coroner McLeod

13  convened an inquest jury pursuant to RCW 36.24.020.  During the inquest, the jury heard

14  live testimony from fact and expert witnesses.  The jury also received all photographs,

15  reports, and other written evidence gathered by law enforcement during its investigation

16  into Ronda Reynolds's death.  Following the evidence presentation, the jury unanimously

17  found by a preponderance of the evidence that Reynolds was responsible for the

18  homicide of Ronda Reynolds.  Under Washington law, this procedure was a legally

19  permissible method for establishing probable cause.  *Jefferson*, 79 Wn.2d at 347.

20  Coroner McLeod issued an arrest warrant for Reynolds based on the inquest jury's

21  decision.  Because probable cause supported the arrest warrant, Coroner McLeod did not

22  violate Reynolds's Fourth Amendment rights.

1    Reynolds nevertheless contends that his arrest was not based on probable cause

2    because the inquest was invalid.  Dkt. 43-1 at 27.  According to Reynolds, Coroner

3    McLeod lacked jurisdiction to conduct an inquest in this case.  *Id.* at 10.  Reynolds also

4    asserts that the inquest was untimely and barred by RCW 4.16.130's two-year statute of

5    limitations.  *Id.* at 11–12.  Next, Reynolds argues that Coroner McLeod's decision to hold

6    the inquest was arbitrary and capricious.  *Id.* at 23.  Finally, Reynolds argues that the

7    inquest was unfair and biased because two jurors had read a book about Ronda

8    Reynolds's death.  *Id.* at 18.

9    Reynolds's arguments are unavailing.  First, Coroner McLeod had statutory

10   authority to hold an inquest pursuant to RCW 36.24.020.  "Coroner inquests are

11   authorized by chapter 36.24 RCW."  *In re Boston*, 112 Wn. App. 114, 117 (2002).  RCW

12   36.24.020 authorizes a coroner to hold an inquest proceeding in his or her discretion.  *See*

13   *id.*; RCW 36.24.020.  Reynolds provides no authority that would limit Coroner McLeod's

14   discretion under RCW 36.24.020 to hold an inquest in this case.

15   Additionally, the inquest was not barred by RCW 4.16.130's statute of limitations.

16   RCW 4.16.130 provides that "[a]n action for relief not hereinbefore provided for, shall be

17   commenced within two years after the cause of action shall have accrued."  Under the

18   plain language of the statute, RCW 4.16.130 applies to "actions for relief."  A coroner's

19   inquest, however, is not an action for relief.  *In re Boston*, 112 Wn. App. at 118.  Instead,

20   a coroner's inquest is "a means by which the executive determines cause of death."  *Id.*

21   Reynolds has not cited any authority establishing that RCW 4.16.130 applies to executive

22

1   functions, such as an inquest.  In the absence of such authority, the Court concludes that

2   RCW 4.16.130's statute of limitations did not apply to the inquest in this case.

3           Moreover, Coroner McLeod convened the inquest within a reasonable time after

4   the trial court's order.  In 2010, the trial court ordered that Ronda Reynolds's death be

5   redetermined.  Shortly after taking office in 2011, Coroner McLeod decided to hold an

6   inquest to comply with the trial court's order.  While the inquest occurred thirteen years

7   after Ronda Reynolds's death, Coroner McLeod convened the inquest within a reasonable

8   time in light of the trial court's order.

9           Reynolds has also not established that Coroner McLeod's decision to hold the

10  inquest was arbitrary and capricious.  When a coroner exercises his or her discretion to

11  hold an inquest under RCW 36.24.020, "[t]he scope of a trial court's review is limited to

12  a determination of whether the discretion was exercised arbitrarily or capriciously."

13  *Vanderpool v. Rabideau*, 16 Wn. App. 496, 498 (1976).  "[T]he burden of establishing

14  arbitrary and capricious conduct rests upon the party asserting it."  *State ex. rel. Lopez-*

15  *Pacheco v. Jones*, 66 Wn.2d 199, 201 (1965).  Arbitrary and capricious conduct means

16  "willful and unreasoning action, without consideration and in disregard of facts or

17  circumstances."  *Id.*  "Where there is room for two opinions, action is not arbitrary or

18  capricious when exercised honestly and upon due consideration, even though it may be

19  believed that an erroneous conclusion has been reached."  *Id.*

20          Under the circumstances in this case, Coroner McLeod's decision to hold the

21  inquest was not arbitrary or capricious.  A jury found that Coroner Wilson inaccurately

22  determined that Ronda Reynolds's death was a suicide.  The trial court ordered that the

1    manner of Ronda Reynolds's death be redetermined.  Coroner McLeod was informed of

2    the trial court's order when he took office.  Coroner McLeod decided to hold an inquest

3    to comply with the trial court's order.  Although Reynolds disagrees with Coroner

4    McLeod's decision to hold the inquest, the evidence in the record demonstrates that

5    Coroner McLeod considered the facts and circumstances with due care before exercising

6    his discretion under RCW 36.24.020.  Reynolds's belief that Coroner McLeod reached an

7    erroneous conclusion is insufficient to establish arbitrary and capricious conduct.

8          Finally, all of the jurors swore under oath to be fair and impartial and to reach a

9    verdict solely based on evidence presented at the inquest.  Reynolds has not pointed to

10   any evidence that the jurors failed to follow the instructions given.  In the absence of such

11   evidence, the Court presumes that the jurors followed their instructions.  *See United*

12   *States v. Olano*, 507 U.S. 725, 740 (1993); *Richardson v. Marsh*, 481 U.S. 200, 206

13   (1987).

14         In sum, probable cause supported Coroner McLeod's issuance of the arrest

15   warrant.  The Court therefore concludes that Coroner McLeod did not violate Reynolds's

16   Fourth Amendment rights.

17                    **ii.    Fourteenth Amendment**

18         Reynolds also alleges that Coroner McLeod violated his due process rights under

19   the Fourteenth Amendment.  Comp. ¶ 3.1; Dkt. 43-1 at 27.

20                    **1.    Procedural Due Process**

21         Reynolds contends that Coroner McLeod deprived him of liberty and property

22   without due process of law.  Comp. ¶ 3.1; Dkt. 43-1 at 27.  "The Fourteenth Amendment

1   protects one from deprivations of property or liberty without procedural due process."

2   *Roley v. Pierce Cnty. Fire Protection Dist.*, 869 F.2d 491, 494 (9th Cir. 1989).  "A

3   procedural due process claim has two elements: deprivation of a constitutionally

4   protected liberty or property interest and denial of adequate procedural protection."

5   *Krainski v. Nev. ex. rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970

6   (9th Cir. 2010).  Due process requires notice and a meaningful opportunity to be heard.

7   *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Mullane v. Cent. Hanover Bank & Trust*

8   *Co.*, 339 U.S. 306, 313 (1950).

9       Reynolds first argues that he was not afforded due process protections before he

10   was arrested.  Dkt. 43-1 at 27.  Although Reynolds's arrest implicates a liberty interest

11   under the Fourteenth Amendment, Reynolds received all the procedural protection that

12   was constitutionally due.  The Fourth Amendment "define[s] the 'process that is due' for

13   seizures of persons . . . ."  *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975).  The Fourth

14   Amendment requires "a fair and reliable determination of probable cause as a condition

15   for any significant pretrial restraint of liberty."  *Baker v. McCollan*, 443 U.S. 137, 142

16   (1979).  As discussed above, Reynolds's arrest warrant was based on probable cause.

17   Thus, Reynolds was not deprived of liberty without due process of law when he was

18   arrested.

19       Reynolds also argues that he was deprived of a property interest in continued

20   employment without due process.  Dkt. 43-1 at 27.  Following the inquest, Reynolds

21   resigned from his job with the Toledo School District.  When an employee resigns, he

22   voluntarily relinquishes the property interest that the Due Process Clause protects.  *See*

1  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).  Nonetheless, a

2  "resignation may be involuntary and constitute a deprivation of property for purposes of a

3  due process claim" in some circumstances.  *Id.* at 941.  To succeed on an involuntary

4  resignation theory, Reynolds must "come forward with sufficient evidence to

5  demonstrate that a reasonable person in his position would feel he has no choice but to

6  [resign]."  *Id.*  Reynolds, however, has failed to meet his burden on this theory.  Reynolds

7  has not presented evidence demonstrating that a reasonable person in his position would

8  feel coerced to resign.

9      Finally, Reynolds contends that his reputation was tarnished in the community

10  following the inquest proceeding.  Damage to reputation by itself, however, does not

11  constitute a liberty or property interest for the purposes of procedural due process.  *Paul*

12  *v. Davis*, 424 U.S. 693, 712 (1976).

13      Even if Reynolds was deprived of a constitutionally protected interest, Reynolds

14  received adequate procedural protection.  As noted above, due process requires notice

15  and an opportunity to be heard.  *Mathews*, 424 U.S. at 333; *Mullane*, 339 U.S. at 313.

16  Here, Coroner McLeod notified Reynolds that the inquest was going to occur.  Coroner

17  McLeod also provided Reynolds with an opportunity to be heard by the inquest jury prior

18  to the issuance of the arrest warrant.  Finally, Reynolds was notified that the arrest

19  warrant was issued and given an opportunity to appear before a judge.  Thus, the minimal

20  requirements of procedural due process were satisfied in this case.

21      For these reasons, the Court concludes that Coroner McLeod did not violate

22  Reynolds's procedural due process rights under the Fourteenth Amendment.

1          **2.      Substantive Due Process**

2          Reynolds also contends that Coroner McLeod violated his substantive due process

3  rights by reissuing the arrest warrant.  Dkt 43-1 at 27.  Substantive due process protects

4  individuals from arbitrary deprivation of their liberty or property by the government.

5  *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).  In order to establish a

6  constitutional violation based on substantive due process, Reynolds must show both a

7  deprivation of his liberty or property and conscience shocking behavior by the

8  government.  *Id.*  "[O]nly the most egregious official conduct can be said to be arbitrary

9  in the constitutional sense . . . ."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)

10  (internal quotation marks omitted).

11         To the extent that Reynolds's substantive due process claim is based on his arrest,

12  such a claim should be analyzed exclusively under the Fourth Amendment rather than

13  under the rubric of substantive due process.  *See Fontana v. Haskin*, 262 F.3d 871, 882

14  (9th Cir. 2001).  For the reasons discussed above, Coroner McLeod did not violate

15  Reynolds's Fourth Amendment rights by issuing the arrest warrants.  To the extent that

16  Reynolds's substantive due process claim is based on his subsequent resignation and

17  damaged reputation, Reynolds has failed to establish that he was deprived of a

18  constitutionally protected interest.

19         Even assuming Reynolds was deprived of a constitutionally protected interest,

20  Coroner McLeod's actions were not conscious shocking.  Ronda Reynolds was found

21  dead from a single gunshot wound to the head.  Under RCW 36.24.020, Coroner McLeod

22  had discretion to conduct an inquest into her manner of death.  The inquest jury heard

1    evidence and rendered a verdict identifying homicide as the manner of Ronda Reynolds's

2    death and Reynolds as one of the responsible persons.  Following the jury's decision,

3    Coroner McLeod issued an arrest warrant for Reynolds pursuant to RCW 36.24.100.

4           Although Coroner McLeod quashed and reissued Reynolds's arrest warrant twice,

5    the evidence demonstrates that Coroner McLeod thoughtfully considered the

6    circumstances and Washington law in doing so.  Coroner McLeod quashed the first

7    warrant after being notified that an inquest juror was possibly seen reading a book about

8    Ronda Reynolds's death.  After an investigation established that the allegation was

9    unfounded, Coroner McLeod reissued the arrest warrant.  Coroner McLeod quashed the

10   second warrant when he learned that the Lewis County Prosecutor would not file charges

11   against Reynolds.  Coroner McLeod reviewed RCW 36.24.100 again and determined that

12   the statute's language regarding the issuance of arrest warrants was mandatory under the

13   circumstances in this case.  *See* RCW 36.24.100 ("[T]he coroner *shall* issue a warrant for

14   the arrest of the person charged . . . ." (emphasis added)).  He therefore reissued the final

15   arrest warrant.  Based on this evidence, Coroner McLeod's reissuance of the arrest

16   warrants was not conscious shocking.  *See Brittain*, 451 F.3d at 996 ("[S]ubstantive due

17   process secures individuals from 'arbitrary' government action that rises to the level of

18   'egregious conduct,' not from reasonable, though possibly erroneous, legal

19   interpretation.").  Thus, Coroner McLeod did not violate Reynolds's substantive due

20   process rights.

21

22

1

             **iii.**    **Clearly Established**

2

        Even if Coroner McLeod's actions did violate Reynolds's constitutional rights,

3 McLeod did not violate clearly established law.  "A Government official's conduct

4 violates clearly established law when, at the time of the challenged conduct, the contours

5 of a right are sufficiently clear that every reasonable official would have understood that

6 what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)

7 (internal quotation marks omitted).  While a case does not need to be directly on point,

8 "existing precedent must have placed the statutory or constitutional question beyond

9 debate." *Id.*  "If the law did not put the officer on notice that his conduct would be

10 clearly unlawful, summary judgment based on qualified immunity is appropriate."

11 *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

12

        Reynolds has not identified, and the Court is unaware of, any law that would put

13 Coroner McLeod on notice that his actions were clearly unlawful under the circumstances

14 in this case.  Accordingly, Coroner McLeod is entitled to qualified immunity.  The Court

15 grants Defendants' motion on this issue.

16

              **b.**    **Municipal Liability**

17

        Reynolds also alleges that Lewis County is liable for Coroner McLeod's

18 unconstitutional actions because Coroner McLeod is the final policymaker for Lewis

19 County.  Dkt. 43-1 at 28.  Defendants argue that Lewis County is not liable because no

20 constitutional violation occurred.  Dkt. 28 at 6.

21

        "While local governments may be sued under § 1983, they cannot be held

22 vicariously liable for their employees' constitutional violations."  *Gravelet-Blondin v.*

1  *Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013).  Instead, a municipality may only be held

2  liable under section 1983 if the execution of its policy, custom, or practice caused a

3  municipal employee to violate an individual's constitutional rights.  *Monell v. Dep't of*

4  *Soc. Servs.*, 436 U.S. 658, 691–92 (1978).

5       In this case, the County cannot be held liable under section 1983 for Coroner

6  McLeod's actions because no constitutional violation occurred.  *See Long v. City & Cnty.*

7  *of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007) ("If no constitutional violation occurred,

8  the municipality cannot be held liable . . . .").  As discussed above, Coroner McLeod did

9  not violate Reynolds's Fourth or Fourteenth Amendment rights.  Thus, there is no basis

10 for finding the County liable.

11     **3.    State Law Claims**

12     In addition to his section 1983 claims, Reynolds alleges state law claims against

13 Coroner McLeod for abuse of process, false arrest and unlawful detention, and libel.

14 Comp. ¶¶ 3.2–3.4.

15     **a.    Statutory Immunity**

16     Defendants argue that Coroner McLeod is immune from Reynolds's state law

17 claims under RCW 68.50.015.  Dkt. 28 at 15–19.  RCW 68.50.015 provides, in relevant

18 part, as follows: "A county coroner or county medical examiner or persons acting in that

19 capacity shall be immune from civil liability for determining the cause and manner of

20 death."  In response, Reynolds contends that Coroner McLeod is not entitled to statutory

21 immunity because Coroner McLeod convened an inquest jury and thus did not personally

22 determine the cause and manner of Ronda Reynolds's death.  Dkt. 43-1 at 31.  Reynolds,

1    however, does not cite any authority that RCW 68.50.010 does not apply when a coroner

2    utilizes an inquest jury to help determine an individual's cause and manner of death.

3    Even if Coroner McLeod is not entitled to statutory immunity under RCW 68.50.015,

4    Reynolds has failed to present evidence to support his state law claims.  The Court will

5    address each claim in turn.

6                  **b.**       **Abuse of Process**

7         Reynolds alleges that Coroner McLeod's decision to conduct the inquest was an

8    abuse of process.  Comp. ¶ 3.2.  "The two essential elements for 'abuse of process' are

9    (1) the existence of an ulterior purpose—to accomplish an object not within the proper

10   scope of the process—and (2) an act in the use of legal process not proper in the regular

11   prosecution of the proceedings."  *Fite v. Lee*, 11 Wn. App. 21, 27 (1974).  "The mere

12   institution of a legal proceeding even with a malicious motive does not constitute an

13   abuse of process."  *Id.* at 27–28.  Here, Reynolds has not presented evidence to establish

14   either element for his abuse of process claim.  The Court therefore grants Defendants'

15   motion on this claim.

16                 **c.**       **False Arrest and Unlawful Detention**

17        Reynolds also alleges that Coroner McLeod's actions resulted in his false arrest

18   and unlawful detention.  Comp. ¶ 3.3.  "The gist of an action for false arrest or false

19   imprisonment is the unlawful violation of a person's right of personal liberty or the

20   restraint of that person without legal authority . . . ."  *Bender v. City of Seattle*, 99 Wn.2d

21   582, 591 (1983).  The existence of probable cause is a complete defense to an action for

22   false arrest and false imprisonment.  *McBride v. Walla Walla Cnty.*, 95 Wn. App. 33, 38

1   (1999).  As discussed above, probable cause supported the issuance of Reynolds's arrest

2   warrant in this case.  The Court therefore grants Defendants' motion on Reynolds's false

3   arrest and false imprisonment claims.

4            **d.    Libel**

5            Finally, Reynolds alleges that Defendants' actions were libelous and damaged his

6   reputation.  Comp. ¶ 3.4.  A plaintiff must prove four elements to establish libel: (1)

7   falsity; (2) an unprivileged communication; (3) fault; and (4) damages.  *Mark v. Seattle*

8   *Times*, 96 Wn.2d 473, 486 (1981).  "When a defendant in a defamation action moves for

9   summary judgment, the plaintiff has the burden of establishing a prima facie case on all

10  four elements . . . ."  *LaMon v. Butler*, 112 Wn.2d 193, 197 (1989).  "The prima facie

11  case must consist of specific, material facts, rather than conclusory statements, that would

12  allow a jury to find that each element of defamation exists."  *Id.*

13           In response to Defendants' motion, Reynolds argues that the homicide allegations

14  were false and his name was dragged through the mud.  Dkt. 43-1 at 31–32.  Conclusory

15  statements are insufficient to withstand summary judgment.  Because Reynolds has failed

16  to point to specific facts to support each element of his libel claim, the Court grants

17  Defendants' motion on this claim.

18  **B.    Reynolds's Cross-Motion for Summary Judgment**

19           Reynolds cross-moves for summary judgment on the following grounds: (1)

20  Coroner McLeod lacked authority to conduct the inquest; (2) Coroner McLeod's decision

21  to conduct the inquest was arbitrary and capricious; (3) the inquest was unfair and

22

1    impartial; and (4) his arrest was unconstitutional.  Dkt. 43.  For the reasons discussed

2    above, the Court denies Reynolds's cross-motion on these issues.

3                                          **IV. ORDER**

4           Therefore, it is hereby **ORDERED** that Defendants' motion to strike (Dkt. 51) is

5    **DENIED**.  Defendants' motion for summary judgment (Dkt. 28) is **GRANTED** and

6    Reynolds's cross-motion for summary judgment (Dkt. 43) is **DENIED**.  The Clerk shall

7    close the case.

8           Dated this 7th day of April, 2015.

9

10                                                    _____
                                                     BENJAMIN H. SETTLE
11                                                   United States District Judge

12

13

14

15

16

17

18

19

20

21

22